ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**[1]

| | | |
|---|---|---|
| **ONEL GONZÁLEZ ORTÍZ**<br>DEMANDANTE(S)-RECURRIDA(S)<br><br>V.<br><br>**MATOSANTOS COMMERCIAL CORPORATION Y OTROS**<br>DEMANDADA(S)-PETICIONARIA(S) | **KLCE202500388** | *CERTIORARI*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **BAYAMÓN**<br><br>Caso Núm.<br>**BY2024CV01213 (701)**<br><br>Sobre:<br>Despido Injustificado (Ley Núm. 80) y Otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

# S E N T E N C I A

En San Juan, Puerto Rico, hoy día 7 de octubre de 2025.

Comparece ante este Tribunal de Apelaciones, **MATOSANTOS COMMERCIAL CORPORATION** (**MATOSANTOS COMMERCIAL**) y **EUROCARIBE PACKING COMPANY, INC.** (**EUROCARIBE PACKING**) mediante un *Recurso de Certiorari* interpuesto el 11 de abril de 2025. En su recurso, nos solicita que revisemos la *Resolución* decretada el 31 de marzo 2025 por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón.[2] Mediante la referida conclusión, el foro primario declaró *no ha lugar* la *Solicitud de Sentencia Sumaria* presentada el 12 de diciembre de 2024 por **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING**; y denegó la *Solicitud de Sentencia Sumaria* presentada el 12 de diciembre de 2024 por el señor **ONEL GONZÁLEZ ORTIZ** (señor **GONZÁLEZ ORTIZ**).

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

---

[1] Véase *Orden Administrativa DJ 2024-062C* de 6 de mayo de 2025 sobre *Designación de Paneles en el Tribunal de Apelaciones*.
[2] Dicho dictamen judicial fue notificado y archivado en autos el 1 de abril de 2025. Apéndice del *Recurso de Certiorari*, págs. 1- 23.

- I -

El día 1 de marzo de 2024, el señor **GONZÁLEZ ORTIZ** incoó *Querella* contra **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** alegando haber sido despedido de su empleo de forma arbitraria, caprichosa, injustificada, discriminatoria con relación a su edad y en represalias por haber objetado la falta de pago de incentivos y/o comisiones así como la asignación de una plaza de empleo (Representante de Ventas en Propiedad) a una persona más joven.[3] El señor **GONZÁLEZ ORTIZ**, también arguyó que el 23 de agosto de 2021, comenzó a laborar para **MATOSANTOS COMMERCIAL** como Implementador de Categoría. Explicó que posteriormente, le fue ofrecido el puesto de Representante de Venta "At Large", el cual inicialmente rechazó en espera de la posición de Representante de Venta "en Propiedad". Manifestó que luego aceptó el puesto de Representante de Venta "At Large", efectivo el 10 de enero de 2022.

El señor **GONZÁLEZ ORTIZ** añadió que durante su empleo acumuló licencia por vacaciones y enfermedad, habiendo juntado un total de nueve (9) días al momento del cambio. Dilucidó que durante septiembre de 2022 y los meses de febrero a junio de 2023, cubrió el periodo de enfermedad de uno de los Representantes de Ventas "en Propiedad", pero no recibió compensación por el pago de las comisiones e incentivos.

Enunció que, para julio de 2023, disfrutó de unos días de vacaciones, pero a su regreso presentó síntomas; por lo que, acudió a un médico que le diagnosticó gastroenteritis y salmonela, así como le entregó un certificado médico que le excusó de su empleo desde el 7 de agosto hasta el 17 de agosto de 2023.[4] Señaló que mientras se encontraba en su licencia de enfermedad, el 17 de agosto de 2023, **MATOSANTOS COMMERCIAL** le notificó que fue despedido.

---

[3] Apéndice del *Recurso de Certiorari*, págs. 24- 34.
[4] El 16 de agosto de 2023. el señor **GONZÁLEZ ORTIZ** presentó un segundo certificado médico expresando que podría reincorporarse luego del 28 de agosto de 2023. Apéndice del *Recurso de Certiorari*, pág. 28.

Por su parte, el 1 de abril de 2024, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** presentaron su *Contestación a la Querella*.[5] En esta, razonaron que el señor **GONZÁLEZ ORTIZ** fue despedido con justa causa debido a violaciones serias a las normas, políticas y procedimientos. Además, plantearon que este mintió durante una investigación oficial llevada a cabo por la compañía, que dio lugar a su despido. Puntualizaron que, durante el periodo relevante, se había contratado empleados de la misma edad e inclusive mayores para la posición de Representante de Ventas "en Propiedad"; de igual modo que las alegaciones contenidas en la *Querella* eran conclusivas, ambiguas y vagas.

**MATOSANTOS COMMERCIAL** precisó que el señor **GONZÁLEZ ORTIZ** era un empleado exento, quien acumulaba licencia por vacaciones y enfermedad acorde con la política para empleados exentos de **MATOSANTOS COMMERCIAL**. Asimismo, concretó que la compañía le pagó todos los salarios, comisiones y vacaciones; por lo que, no tenía derecho a suma alguna.

El mismo día, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** presentó *Moción Solicitando se Trámite el Presente Caso Bajo el Procedimiento Ordinario*.[6] El 15 de abril de 2024, el señor **GONZÁLEZ ORTIZ** presentó su *Oposición a Solicitud de Conversión de los Procedimientos*.[7] Consecutivamente, en audiencia celebrada el 7 de mayo de 2024, tras escuchados los argumentos de las partes, el foro primario decidió que el procedimiento se mantuviese como uno sumario y precisó un calendario para llevar a cabo el descubrimiento de prueba conforme a las disposiciones de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada.[8]

Luego de varias incidencias procesales, el 12 de diciembre de 2024, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** presentaron *Solicitud de*

---

[5] Apéndice del *Recurso de Certiorari*, págs. 35- 47.
[6] *Íd.*, págs. 48- 54.
[7] *Íd.*, págs. 55- 58.
[8] Entrada núm. 20 del expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC-TPI).

*Sentencia Sumaria.*[9] En consecuencia, el 23 de enero de 2025, el señor **GONZÁLEZ ORTIZ** presentó *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Parte Querellante.*[10] Más tarde, el 24 de febrero de 2025, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** presentaron *Réplica a "Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Parte Querellante".*[11]

Por consiguiente, el 31 de marzo de 2025, se dictaminó la *Resolución* impugnada conteniendo los siguientes hechos como incontrovertidos (probados):

1. **MATOSANTOS** se dedica a la manufactura, mercadeo y distribución de productos en Puerto Rico, el Caribe, regiones de Estados Unidos, Latinoamérica y Europa.

2. El señor **GONZÁLEZ** comenzó a trabajar para **MATOSANTOS**, el 23 de agosto de 2021, en la posición de "Implementador de Categorías" hasta el 10 de enero de 2022, fecha en que comenzó a ocupar el puesto de "Representante de Ventas *At Large*".

3. Al comenzar su empleo, el señor **GONZÁLEZ** recibió copia, y acusó recibo, del Manual del Empleado de **MATOSANTOS**.

4. Sus supervisores, como "Representante de Ventas *At Large*", fueron el Sr. Ángel Álvarez, Supervisor, Sr. Alberto Morales, Gerente de Ventas, y Sr. Gerónimo Matosantos, Jr., Supervisor del Área Metro.

5. El señor **GONZÁLEZ** siempre tuvo una relación cordial de trabajo con los tres (3) supervisores.

6. Como "Representante de Ventas *At Large*", el querellante tenía, como deberes y responsabilidades principales, sustituir a los Representantes de Ventas que se encontraban acogidos a alguna licencia y realizar las funciones de venta y servicio, y asegurarse que los productos estaban disponibles para venta, incluyendo en los supermercados SuperMax, Econo y Walmart.

7. Específicamente, el señor **GONZÁLEZ** atendía a clientes en la Región Este y en la Región Metro.

---

[9] Apéndice del *Recurso de Certiorari*, págs. 65- 767. Acompañada de los siguientes documentos: (i) Deposición de 29 de agosto de 2024 tomada a Onel González Ortiz; (ii) Acuse de recibo del Manual de Empleados; (iii) Manual de Empleados (HR Handbook); (iv) **MATOSANTOS COMMERCIAL** Programa de Compensación Año 2021- 2022; (v) Correo electrónico incidente de 27 de julio de 2023 cursado por José Oyola; (vi) Correo electrónico de 8 de agosto de 2023 suscrito por Alberto Morales; (vii) Certificado Médico de 7 de agosto de 2023; (viii) Certificado Médico de 16 de agosto de 2023; (ix) Deposición de 20 de septiembre de 2024 tomada a Onel González Ortiz; (x) Deposición de 27 de agosto de 2024 tomada a Arisbel Castro del Moral; (xi) Comprobante de Retención (W-2) 2022; (xiv) Declaración Jurada sobre Certificación de Integridad de Récord Electrónico tomada a Andy A. Andrades Rosado fechada 9 de octubre de 2024; y (xiii) Video.
[10] Apéndice del *Recurso de Certiorari*, págs. 768- 816.
[11] *Íd.*, págs. 817- 874.

8. La diferencia entre un "Representante de Ventas *At Large*" y un "Representante de Ventas en Propiedad" es que el "Representante de Ventas *At Large*", como el señor GONZÁLEZ, no tiene rutas fijas y sus rutas dependen de las necesidades de la Compañía— específicamente, de sustituir a los "Representante de Ventas en Propiedad" que se encontraban disfrutando de alguna licencia, en particular.

9. Además, el "Representante de Ventas *At Large*" no tiene derecho a comisiones, sino a unos incentivos trimestrales.

10. Como "Representante de Ventas *At Large*", el señor GONZÁLEZ era un empleado exento y su compensación consistía en un salario fijo de $13.50 por hora e incentivos trimestrales. Además, como beneficio, el señor GONZÁLEZ participaba en un plan 401(k), tenía derecho a bono de Navidad y se le concedía licencia de vacaciones y enfermedad.

11. El querellante, como empleado exento, tenía 15 días de licencia de vacaciones al año.

12. Durante su empleo, el señor GONZÁLEZ sustituyó al Sr. Javier Belén, Representante de Ventas, cuando éste se acogió a una licencia. Específicamente, el querellante sustituyó al señor Belén desde el 24 de febrero de 2023 hasta el 17 de agosto de 2023.

13. La Sra. Arisbel Castro, Directora de Recursos Humanos de MATOSANTOS, reconoció que, en algún momento, se le pagaron comisiones al señor GONZÁLEZ y ésta indicó que fue porque el Sr. Víctor Pérez, CEO de la Compañía, determinó que le podían pagar comisiones para ciertos periodos, porque llevaba mucho tiempo cubriendo la ruta del Sr. Javier Belén.

14. Como "Representante de Ventas *At Large*", el querellante tenía que cumplir con sus funciones, deberes y responsabilidades, que no podía incurrir en actos de negligencia ni intencionales, que no podía incurrir en conducta que afectara los intereses de MATOSANTOS ni que representara una pérdida para MATOSANTOS y/o clientes de MATOSANTOS.

15. El señor GONZÁLEZ, el 20 de julio de 2023, acudió a la tienda de SuperMax, en Caguas, como "Representante de Ventas *At Large*" de MATOSANTOS, mientras estaba sustituyendo al Sr. Javier Belén.

16. Específicamente, el señor GONZÁLEZ llegó entre las 8:15 am y 8:20 am. Sin embargo, el producto aún no había llegado y no se entregó hasta pasadas de las 10:00 am. Cuando llegó el producto, realizó el servicio de poner los productos en las góndolas, neveras, etc. Además, hubo un sobrante de producto, incluyendo de jamones Atalanta.

17. El señor GONZÁLEZ conocía que el uso de una compactadora de cartón es, exclusivamente, para compactar cajas de cartón que estén vacías y que no deben tener producto alguno.

18. Ningún otro Representante de Ventas de MATOSANTOS acudió a la tienda de SuperMax, en Caguas, ese día.

19. Mientras el señor GONZÁLEZ disfrutaba de sus vacaciones, el Sr. Ángel Álvarez se comunicó con este y le informó que había

ocurrido un incidente, el 20 de julio de 2023, en la tienda de SuperMax de Caguas y que había un video, relacionado al mismo.

20. El señor González tenía conocimiento que SuperMax se quejó, por una situación, ocurrida el 20 de julio de 2023.

21. Específicamente, el 20 de julio de 2023, personal de SuperMax de la tienda de Caguas encontró, dentro de la compactadora, en el área de almacén, mercancía que es distribuida por **MATOSANTOS**.

22. SuperMax le comunicó la situación a **MATOSANTOS** y esta realizó una investigación.

23. **MATOSANTOS** investigó la situación y llegó a la conclusión de que el incidente se debió a las acciones del señor **GONZÁLEZ**.

24. El 2 de agosto de 2023, la Sra. Arisbel Castro se reunió con el Sr. Víctor Pérez y el Sr. Gerónimo Matosantos, para discutir los resultados de la investigación y tomar una decisión, en cuanto al empleo del querellante, a raíz de esta.

25. La Sra. Arisbel Castro, como Directora de Recursos Humanos de **MATOSANTOS**, confirmó que el Sr. Víctor Pérez es el CEO de **MATOSANTOS** y que el Sr. Gerónimo Matosantos es el Presidente de la Compañía.

26. En la reunión del 2 de agosto de 2023, la Sra. Arisbel Castro discutió el correo electrónico de parte de la Supervisora de Auditoría Interna de SuperMax, de la visita del Sr. Ángel Álvarez a la tienda de SuperMax y su observación directa de los productos, del vídeo y el impacto económico y de negocios que tuvo la antedicha conducta del señor **GONZÁLEZ**.

27. El Sr. Víctor Pérez, el Sr. Gerónimo Matosantos y la Sra. Arisbel Castro fueron quienes tomaron la determinación de despedir al señor **GONZÁLEZ**.

28. El 4 de agosto de 2023, la Sra. Arisbel Castro le escribió al señor **GONZÁLEZ** para que éste se reportara a la Oficina de Recursos Humanos el lunes, 7 de agosto de 2023, por la mañana.

29. El 7 de agosto de 2023, el señor **GONZÁLEZ** envió un certificado médico, donde se le recomendaba descanso hasta el 17 de agosto de 2023, a la Sra. Arisbel Castro.

30. Luego, el 16 de agosto de 2023, el señor **GONZÁLEZ** envió otro certificado médico con una extensión de descanso hasta el 28 de agosto de 2023.

31. El 17 de agosto de 2023, la Sra. Arisbel Castro se comunicó con el querellante, por teléfono.

32. En dicha llamada, se encontraban, además de la señora Castro y el señor **GONZÁLEZ**, el Sr. Alberto Morales, la Sra. Karla Cruz, Asistente de Recursos Humanos de **MATOSANTOS** y la Sra. Dunia McGregor, Directora Comercial de **MATOSANTOS**.

33. En la llamada del 17 de agosto de 2023, la Sra. Arisbel Castro le informó al señor **GONZÁLEZ** que **MATOSANTOS** investigaba el incidente del 20 de julio de 2023 y le preguntó si éste había, en dicha fecha, puesto productos de **MATOSANTOS** dentro de la compactadora de SuperMax. El señor **GONZÁLEZ** negó haberlo

hecho. Se le informó, además, que había un vídeo que demostraba lo que el querellante había hecho y el querellante no comentó nada, en cuanto a este último asunto.

34. En esa misma llamada, la Sra. Arisbel Castro le informó al señor **GONZÁLEZ** que **MATOSANTOS** estaba prescindiendo de sus servicios y terminando, efectivo inmediato, su relación de empleo con la Compañía.

35. El señor **GONZÁLEZ** fue despedido, por teléfono, el 17 de agosto de 2023, mientras se encontraba acogido a una licencia por enfermedad, evidenciada con certificados médicos.

36. El señor **GONZÁLEZ** negó haber incurrido en la falta imputada.

37. El querellante reconoce que las tres (3) personas que nombraron en la posición de los Representantes de Ventas "en Propiedad" fueron: la Sra. Cynthia Corchado, la Sra. Miriam Díaz y el Sr. Iván Colón Roque.

38. La Sra. Cynthia Corchado comenzó a trabajar para **MATOSANTOS** antes que el señor **GONZÁLEZ** y es mayor que el señor **GONZÁLEZ**.

39. El Sr. Iván Colón nació el 13 de enero de 1986 y comenzó a trabajar en la Compañía, el 29 de mayo de 2023.

40. La Sra. Miriam Díaz nació el 11 de enero de 1981 y comenzó a trabajar para **MATOSANTOS**, el 9 de enero de 2023.

41. La Sra. Miriam Díaz y el Sr. Iván Colón llevaban menos tiempo que el querellante, en la Compañía.

42. El señor **GONZÁLEZ** desconoce los criterios que se tomaron en consideración para nombrar al Sr. Iván Colón Roque o las Sras. Cynthia Corchado y Miriam Díaz a la posición de "Representante de Ventas en Propiedad".

43. El señor **GONZÁLEZ** nunca presentó una queja formal por escrito.

44. El Manual de Empleados establece, en varias secciones, que los empleados podrán acudir a Recursos Humanos para cualquier asunto, incluyendo que "Cualquier empleado(a) con preguntas o preocupaciones acerca de cualquier tipo de discrimen en el trabajo, se le exhorta a traer el asunto a la atención de su supervisor y/o al(la) Gerente de Recursos Humanos. Los empleados pueden traer sus preocupaciones sin miedo a represalia", pero solo tiene un procedimiento formal para quejas sobre hostigamiento sexual.

45. El Manual de Empleados de **MATOSANTOS** exhorta a los empleados a consultar, primero, con sus supervisores, respecto a problemas relacionados con el trabajo o las condiciones del mismo.

46. En su Política de Igualdad de Oportunidades de Empleo de **MATOSANTOS** también exhorta a sus empleados a llevar a la atención de sus supervisores y/o Recursos Humanos preguntas o preocupaciones, acerca de cualquier tipo de discrimen en el empleo.

47. El señor **GONZÁLEZ** desconoce la razón por la que no se le concedió la posición de "Representante de ventas en propiedad" y tampoco conoce por qué no se le pagaron las alegadas comisiones.

48. El señor **GONZÁLEZ** no solicitó reconsideración de la decisión de despedirlo. El Manual de Empleados de la Compañía no provee un procedimiento de reconsideración sobre acciones disciplinarias o despido.

49. El señor **GONZÁLEZ** devengó $29,450.00, en el 2022, por concepto de salario básico, más $9,000[.00], por concepto de gastos reembolsables.

50. Antes de su despido, el señor **GONZÁLEZ** no había sido objeto de alguna amonestación verbal, escrita, suspensión, o se le había llamado la atención por parte de **MATOSANTOS**.

51. La Sra. Arisbel Castro del Moral, directora de Recursos Humanos de **MATOSANTOS**, indicó que, al querellante, al momento de su despido, no se le liquidó la licencia de vacaciones acumulada y no disfrutada, porque la política de **MATOSANTOS** es no liquidar las horas a los empleados exentos.

52. El señor **GONZÁLEZ** trabaja desde el 29 de julio de 2024, como empleado regular, con Plaza Provision Company, como representante de ventas y devenga un salario de $10.00 la hora, $850.00 al mes, por concepto de comisiones y $600[.00] al mes, por concepto de car allowance.

Por otra parte, el foro primario recurrido concluyó que existían las siguientes controversias:

1. Si el señor **GONZÁLEZ** puso alguna caja con mercancía en la compactadora de cartón, en SuperMax.

2. Si a[ú]n, por haber puesto una caja con mercancía en la compactadora, el señor **GONZÁLEZ** debió haber sido despedido, sin disciplina progresiva.

3. Si el despido del señor **GONZÁLEZ** fue justificado.

4. Si el señor **GONZÁLEZ** fue discriminado o hubo represalias en su contra.

5. Si **MATOSANTOS** le adeuda alguna cuantía al señor **GONZÁLEZ**.

Así pues, se declaró *no ha lugar* la *Solicitud de Sentencia Sumaria* presentada el 12 de diciembre de 2024 por **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING;** y se denegó la *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Parte Querellante* presentada 23 de enero de 2025 por el señor **GONZÁLEZ ORTIZ**.

En desacuerdo, el 11 de abril de 2025, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** recurrieron ante este foro revisor intermedio señalando el(los) siguiente(s) error(es):

> Erró el Tribunal de Primera Instancia, Sala Superior de Bayamón, al abusar de su discreción y determinar que no procede dictar Sentencia Sumaria para desestimar las causas de acción de represalias y discrimen presentadas por el señor González contra Matosantos a pesar de haber consignado en el dictamen recurrido que el señor González no cuenta con la evidencia necesaria para tan siquiera establecer un caso *prima facie* luego de haber culminado el periodo de descubrimiento de prueba, ello en contravención de lo dispuesto en *Medina v. M.S. & D Química P.R., Inc.* 135 DPR 716, 732- 734 (1994).

> Erró el Tribunal de Primera Instancia, Sala Superior de Bayamón, al denominar como controversia de hecho la falta grave cometida por el señor González en el trabajo que produjo daños y su despido cuando en realidad es un hecho probado por la evidencia material provista por Matosantos perfectamente adjudicable por la vía sumaria según el derecho aplicable.

El 25 de abril de 2025, pronunciamos *Resolución* concediendo, entre otras cosas, un término de diez (10) días, para mostrar causa por la cual no debíamos expedir el auto de *certiorari* y revocar el fallo impugnado. El 12 de mayo de 2025, el señor **GONZÁLEZ ORTIZ** presentó su *Oposición a Expedición de Auto de Certiorari*.

El 29 de septiembre de 2025, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** presentaron una *Moción en Auxilio de Jurisdicción*.

Evaluado concienzudamente el expediente del caso, y contando con el beneficio de la comparecencia de ambas partes, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II -

- A - *CERTIORARI*

El auto de *certiorari* es un vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda revisar discrecionalmente las órdenes o resoluciones interlocutorias decretadas por una corte de inferior

instancia judicial.[12] Por ello, la determinación de expedir o denegar este tipo de recurso se encuentra enmarcada dentro de la discreción judicial.[13]

De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[14] Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho".[15]

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de las de Procedimiento Civil de 2009.[16] La aludida Regla dispone que solo se expedirá un recurso de *certiorari* cuando, "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo".[17] En ese sentido, y a manera de excepción, se podrá expedir este auto discrecional cuando:

> (1)    se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales;
> (2)    en asuntos relacionados a privilegios evidenciarios;
> (3)    en casos de anotaciones de rebeldía;
> (4)    en casos de relaciones de familia;
> (5)    en casos revestidos de interés público; o
> (6)    en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia.[18]

Lo anterior constituye tan solo la primera parte de nuestro análisis sobre la procedencia de un recurso de *certiorari* para revisar una decisión del Tribunal de Primera Instancia. De modo que, aun cuando un asunto esté comprendido entre las materias que las Reglas de Procedimiento Civil de 2009 nos autorizan a revisar, el ejercicio prudente de esta facultad nos

---

[12] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021).
[13] *Íd.*
[14] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016).
[15] *Íd.*
[16] 32 LPRA Ap. V, R. 52.1; *Torres González v. Zaragoza Meléndez, supra*.
[17] *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021).
[18] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 59- 60, 215 DPR __ (2025); *Torres González v. Zaragoza Meléndez, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra*, pág. 404; *800 Ponce de León v. AIG*, 205 DPR 163 (2020).

requiere tomar en consideración, además, los criterios dispuestos en la Regla

40 del Reglamento del Tribunal de Apelaciones.[19]

Por otro lado, el examen de los [recursos] discrecionales no se da en

el vacío o en ausencia de otros parámetros.[20] Para ello, la Regla 40 de nuestro

Reglamento instituye los indicadores a considerar al evaluar si se debe o no

expedir un recurso de *certiorari*. A saber:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho;
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema;
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia;
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados;
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración;
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; y
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[21]

Es preciso aclarar, que la anterior no constituye una lista exhaustiva,

y ninguno de estos criterios es determinante, por sí solo, para justificar el

ejercicio de nuestra jurisdicción.[22] En otras palabras, los anteriores criterios

nos sirven de guía para poder determinar de la forma más sabia y prudente si

se justifica nuestra intervención en la etapa del procedimiento en que se

encuentra el caso.[23] Ello, pues distinto al recurso de apelación, este Tribunal

posee discreción para expedir el auto de *certiorari*.[24] La delimitación que

imponen estas disposiciones reglamentarias tiene "como propósito evitar la

dilación que causaría la revisión judicial de controversias que pueden esperar

a ser planteadas a través del recurso de apelación."[25]

---

[19] *McNeil Healthcare v. Mun. Las Piedras I, supra,* pág. 404; *800 Ponce de León v. AIG, supra.*
[20] *Íd.*
[21] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, pág. 59- 60, 215 DPR __ (2025); *Torres González v. Zaragoza Meléndez, supra; Rivera Figueroa v. Joe´s European Shop,* 183 DPR 580 (2011).
[22] *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005).
[23] *Mun. Caguas v. JRO Construction, Inc.,* 201 DPR 703, 712 (2019).
[24] *Feliberty v. Soc. de Gananciales,* 147 DPR 834, 837 (1999).
[25] *Scotiabank v. ZAF Corp. et al.,* 202 DPR 478, 486- 487 (2019); *Mun. Caguas v. JRO Construction Inc., supra.*

Finalmente, este Tribunal solo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en un craso abuso de discreción.[26] Esto es, "que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial".[27]

## - B - *PROCEDIMIENTO SUMARIO DE RELACIONES LABORALES*

La Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la *Ley de Procedimiento Sumario de Relaciones Laborales* fue promulgada como un mecanismo procesal, de naturaleza sumaria, cuyo objetivo es lograr la rápida consideración y adjudicación de las reclamaciones laborales por empleados en contra de sus patronos.[28] En esa dirección, sabido es que las reclamaciones laborales ameritan ser resueltas con celeridad de forma tal que se pueda implantar la política pública del Estado, de proteger los empleos, desalentar el despido sin justa causa y proveer al obrero que resulte despedido los medios económicos para su subsistencia mientras consigue un nuevo empleo.[29]

Al mencionar lo anterior, es menester exponer que, con la finalidad de continuar promoviendo el carácter sumario de la ley, la Asamblea Legislativa aprobó la Ley Núm. 133- 2014 en la cual manifestó su intención de extender el carácter sumario del estatuto a la etapa apelativa para cumplir con el propósito rector de la misma, de proveer al obrero un remedio rápido y eficaz.[30] En armonía con lo antes expuesto, nuestro Máximo Foro ha resuelto que la revisión de resoluciones interlocutorias es contrario al carácter

---

[26] *García v. Asociación*, 165 DPR 311, 322 (2005).
[27] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[28] 32 LPRA § 3118. Véase también *Patiño Chirino v. Parador Villa Antonio*, 196 DPR 439, 446 (2016).
[29] *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 265 (2018).
[30] Véase Exposición de Motivos, Ley Núm. 133- 2014. Véase, además *Patiño Chirino v. Parador Villa Antonio*, *supra*, págs. 446- 447.

sumario que, precisamente, busca adelantar el procedimiento. En virtud de ello, los tribunales revisores debemos autolimitar nuestra facultad al efecto.[31]

En ese sentido, la parte que pretenda impugnar las resoluciones interlocutorias deberá esperar hasta la sentencia final e instar contra ella el recurso pertinente a base del alegado error cometido.[32] Asimismo, nuestro Tribunal Supremo ha reconocido que lo anterior no sería absoluto, y, por tanto, cedería en aquellos casos en que alguna resolución sea dictada sin jurisdicción por el Tribunal de Primera Instancia o en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo.[33]

De este modo, a manera de excepción, los tribunales apelativos deben mantener y ejercer su facultad para revisar mediante *certiorari* aquellas resoluciones interlocutorias dictadas en un procedimiento sumario a tenor con la Ley Núm. 2- 1961, *supra*, en aquellos casos extremos en que la revisión inmediata, disponga del caso en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una grave injusticia.[34] Es decir, como excepción, los foros revisores deben mantener y ejercer su facultad revisora mediante *certiorari* solo en aquellas resoluciones interlocutorias dictadas en un procedimiento sumario (querellas laborales), en las siguientes instancias: **(1) cuando el tribunal primario haya actuado sin jurisdicción; (2) en situaciones en las que la revisión inmediata dispone del caso por completo; o (3) cuando la revisión tenga el efecto de evitar una grave injusticia.**[35]

### - C – *REPRESALIAS*

La Ley Núm. 115- 1991, según enmendada, conocida como la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial* tiene como propósito la

---

[31] *Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 496 (1999).
[32] *Íd.*, pág. 497.
[33] *Medina Nazario v. McNeil Healthcare, supra*, pág. 730.
[34] *Dávila, Rivera v. Antilles Shipping, Inc., supra*, pág. 498.
[35] *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 349 (2021) (énfasis nuestro).

protección de los empleos de los trabajadores, tanto en las agencias del Estado Libre Asociado de Puerto Rico como en el sector privado, cuando comparecen ante la Legislatura o ante alguna de sus comisiones, y ante foros administrativos y judiciales para colaborar con dichos foros.[36] La citada Ley impone responsabilidad criminal a los patronos que participan en la decisión de despedir a un empleado por éste haber ofrecido testimonio ante los distintos foros investigativos.

Con relación a la protección que ofrece la Ley Núm. 115- 1991, *supra*, el Artículo 2 instituye lo siguiente:

(a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, **así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley**.

(b) Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley.

(c) **El empleado deberá probar la violación mediante evidencia directa o circunstancial**. El empleado podrá además establecer un caso prima facie de violación a la ley probando que **participó en una actividad protegida por esta ley y que fue subsiguientemente despedido, amenazado o discriminado en su contra de su empleo**. Una vez establecido lo anterior, el patrono deberá alegar y fundamentar una razón legítima y no discriminatoria para el despido. De alegar y fundamentar el patrono dicha razón, el empleado deberá demostrar que la razón alegada por el patrono era un mero pretexto para el despido.[37]

(Énfasis nuestro).

---

[36] *Feliciano Martes v. Sheraton*, 182 DPR 368, 392 (2011); Véase, *Exposición de Motivos* de la Ley Núm. 115- 1991.
[37] 29 LPRA § 194(b).

## - D – *SENTENCIA SUMARIA*

La *sentencia sumaria* es un mecanismo procesal disponible para adjudicar controversias sin la celebración de un juicio.[38] Su propósito o finalidad es propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales, y en los cuales sólo resta dirimir una controversia de derecho.[39]

Este mecanismo se encuentra instituido en la Regla 36 de las de Procedimiento Civil de 2009.[40] Esta prescribe que cualquiera de las partes "podrá presentar [...] una moción fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[41]

Lo anterior implica que, la parte promovente debe demostrar que no existe *controversia sustancial* sobre algún hecho material, pues la *sentencia sumaria* solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes.[42] Para ello, debe desglosar en párrafos debidamente numerados y, para cada uno de ellos, debe especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.[43] La jurisprudencia interpretativa ha definido que "[u]n hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[44]

---

[38] *Birriel Colón v. Econo y otro*, 213 DPR 80 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022).

[39] *Íd.*

[40] 32 LPRA Ap. V, R. 36.

[41] 32 LPRA Ap. V, R. 36.1 y 36.2. *Acevedo y otros v. Dpto. Hacienda y otros*, 212 DPR 335 (2023).

[42] *Oriental Bank v. Caballero García*, 212 DPR 671 (2023).

[43] Regla 36.3(a) de las de Procedimiento Civil de 2009, *supra*. Antedicha Regla enuncia: (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013).

[44] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

Por su parte, quien se opone a que se dicte *sentencia sumaria* está obligado a controvertir la prueba presentada, contestando de forma detallada y específica aquellos hechos pertinentes para demostrar que existe una *controversia real y sustancial* que debe dilucidarse en juicio.[45] Entre la evidencia que puede presentar, están las siguientes: "certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidávits y hasta prueba oral".[46] Es decir, no basta con presentar meras afirmaciones. Resulta insuficiente para derrotar una solicitud de *sentencia sumaria* una declaración jurada que meramente exponga conclusiones reiteradas de las alegaciones de la demanda y hechas sin conocimiento personal de los hechos.[47] Empero, será el análisis del derecho aplicable y de la existencia de alguna *controversia sustancial de hechos materiales* lo que determinará si procede dictar sentencia sumariamente, y no el que la parte contraria deje de oponerse a la solicitud, o lo haga defectuosamente.[48]

Al evaluar la procedencia de la solicitud de *sentencia sumaria,* el tribunal **analizará los documentos que acompañan la moción de *sentencia sumaria*, los documentos incluidos con la moción en oposición y aquellos que obren en el expediente del tribunal**.[49] Por ello, "[t]oda inferencia que se haga a base de los hechos y documentos que obren en los autos, debe tomarse desde el punto de vista más favorable al que se

---

[45] *Ramos Pérez v. Univisión*, 178 DPR 200, 214 (2010). La Regla 36.3 (b) de las de Procedimiento Civil de 2009 sobre la moción y procedimiento expone: La **contestación a la moción de sentencia sumaria** deberá ser presentada dentro del término de veinte (20) días de su notificación y deberá contener lo siguiente: (1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior; (2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.
[46] *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta. Ed., San Juan, LexisNexis, 2017, pág. 318. Regla 36.5 de las de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36.5.
[47] *Íd.*, págs. 215- 216.
[48] *Ortiz v. Holsum*, 190 DPR 511, 525 (2014).
[49] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 913 (1994). (énfasis nuestro).

opone a la solicitud de sentencia sumaria".[50] El tribunal **no** tiene que considerar los hechos que no están debidamente enumerados y no hagan referencia a los párrafos o páginas de las declaraciones juradas u otra prueba admisible en evidencia. Así como, tampoco debe apreciar cualquier declaración jurada o cualquier otra prueba a la cual no se haya hecho referencia en la relación de hechos.

No obstante, "cualquier duda no es suficiente para derrotar una moción de sentencia sumaria; por el contrario, tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes".[51] Por tanto, "[existe] una controversia real cuando la prueba ante el tribunal es de tal naturaleza que un juzgador racional de los hechos podría resolver a favor de la parte promovida".[52]

La parte promovente puede prevalecer por la vía sumaria si presenta prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. En cambio, la parte promovida puede derrotar la moción de tres (3) maneras diferentes: (1) si establece una controversia real de hechos sobre uno de los elementos de la causa de acción de la parte promovente; (2) si presenta prueba que apoye una defensa afirmativa; o (3) si presenta prueba que establezca una controversia sobre la credibilidad de los testimonios jurados que presentó la parte promovente.[53]

En caso de que el foro primario resuelva que procede la celebración de un juicio, es decir: (i) deniegue dictar *sentencia sumaria* sobre la totalidad del pleito; (ii) no conceda todo el remedio solicitado; o (iii) deniegue la moción de *sentencia sumaria*, tiene que consignar los hechos sobre los cuales no hay controversia. Ello, pues serán estos sobre los que será innecesario pasar prueba durante el juicio.[54] Del mismo modo, el tribunal puede dictar *sentencia sumaria* de naturaleza interlocutoria para resolver cualquier

---

[50] *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 610- 611 (2000).
[51] *Ramos Pérez v. Univisión, supra*, pág. 214.
[52] *Íd.*
[53] *Íd.*, pág. 217.
[54] *Pérez Vargas v. Office Depot,* 203 DPR 687 (2003).

controversia que existe entre las partes y sea separable de las controversias restantes.[55]

Aún así, este Tribunal de Apelaciones se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar [denegaciones] o concesiones de mociones de *sentencia sumaria*.[56] Esto significa que, al evaluar la solicitud de *sentencia sumaria*, al igual que el foro primario, debemos aplicar los criterios de la Regla 36 de las de Procedimiento Civil de 2009 y su jurisprudencia interpretativa. Ello supone examinar el expediente de la manera más favorable hacia la parte que se opuso a la solicitud de *sentencia sumaria*, llevando a cabo todas las inferencias permisibles a su favor. Como resultado, tenemos el deber de revisar que tanto la moción de *sentencia sumaria* como su oposición cumplan con los requisitos de forma instituidos en la Regla 36 de las de Procedimiento Civil de 2009.[57]

En esencia, si el foro primario **acogió la moción** y dictó sentencia sumariamente, nos corresponderá revisar que, efectivamente si existen hechos materiales en controversia.[58] De existir, procederemos entonces a cumplir con la exigencia de la Regla 36.4 de las de Procedimiento Civil de 2009 y exponer concretamente cuáles hechos materiales se encontró que están en controversia y cuáles están incontrovertidos.[59] Puede hacerse en la decisión en el cual se disponga del caso y hacer referencia al listado enumerado de hechos incontrovertidos dispuestos por el foro recurrido. Si se

---

[55] 32 LPRA Ap. V, R. 36.3(e).

[56] *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020); *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

[57] *Birriel Colón v. Econo y otro, supra.*

[58] *Rivera Matos et al. v. Triple S et al., supra.*

[59] La mencionada Regla 36.4. sobre Pleito no decidido en virtud de moción decreta: Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será **obligatorio** que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad. A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

determina que los hechos materiales realmente están incontrovertidos, se procederá a revisar *de novo* si el Tribunal de Primera Instancia adjudicó correctamente el derecho.

En palabras sencillas, los tribunales revisores estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales; y (3) comprobar si el derecho se aplicó de forma correcta.[60]

### - E – *INSUFICIENCIA DE LA PRUEBA*

En el cao *Medina v. M. S. & D. Química de P.R.*, Inc., el Máximo Foro de Puerto Rico adoptó el modelo de *sentencia sumaria* por insuficiencia de la prueba reconocido en la esfera federal.[61] "Bajo esta modalidad de la *sentencia sumaria* por insuficiencia de prueba, después de que las partes hayan realizado un adecuado y apropiado descubrimiento de prueba, el promovente puede presentar su moción de sentencia sumaria, alegando la insuficiencia de prueba por parte del promovido".[62]

La parte promovente tiene el peso afirmativo de demostrar que se ha realizado un descubrimiento de prueba completo, adecuado y apropiado, y que, a pesar de ello, la parte promovida no cuenta con evidencia admisible suficiente para probar, por lo menos, un elemento esencial indispensable para su caso.[63] Esta modalidad de la moción de *sentencia sumaria* descansa en la premisa de que le corresponde a la parte demandante probar su caso.[64] Por tanto, por regla general, al defenderse de esta moción, la parte promovida puede solicitar que se posponga su consideración hasta que finalice el descubrimiento de prueba.[65] Empero, una vez completado un descubrimiento de prueba adecuado, la parte promovida no puede evadir presentar una oposición fundamentada.[66] Toda vez que finalizada el

---

[60] *Birriel Colón v. Econo y otro, supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114-116 (2015).
[61] *Medina v. M. S. & D. Química de P.R.*, Inc., 135 DPR 716 (1994).
[62] *Íd.,* pág. 732.
[63] *Íd.,* págs. 732- 733.
[64] *Ramos Pérez v. Univisión, supra,* pág. 218.
[65] *Íd.,* pág. 219.
[66] *Íd.*

descubrimiento de prueba, si la parte promovida no cuenta con prueba suficiente y adecuada que sostenga sus alegaciones, no hay razón para celebrar un juicio.[67]

Una simple alegación en la cual se concluya que no existe una evidencia suficiente para probar el caso no basta para apoyar una moción de *sentencia sumaria* de esta naturaleza. Tampoco se considerará adecuado el descubrimiento de prueba cuando un análisis de los documentos sometidos con la moción, con la oposición y aquellos que constan en el récord, refleje que la parte promovente ha dejado de auscultar alguna información que le pudiera haber conducido a obtener una prueba admisible. Por ejemplo, ha dejado de deponer o de someter un interrogatorio con relación a un testigo que pueda proveer un testimonio relevante.[68]

En definitiva, para que proceda dictar una *sentencia sumaria* por insuficiencia de la prueba la parte promovente debe demostrar que: (1) la vista evidenciaria es innecesaria; (2) la parte demandante no cuenta con evidencia suficiente para probar algún hecho esencial de la causa de acción; y (3) como cuestión de derecho, procede la desestimación de la reclamación.[69]

La parte promovida debe presentar una oposición a la solicitud de *sentencia sumaria* debidamente fundamentada, pues "[n]o puede evadir la moción del promovente por el mero pretexto de que, a pesar de no contar con evidencia suficiente para probar un elemento indispensable de su reclamación, merece 'su día en corte'".[70] Para derrotar una moción de *sentencia sumaria* bajo esta modalidad de la insuficiencia de la prueba, la parte promovida puede: (1) presentar prueba admisible en evidencia o una prueba que pueda convertirse en admisible —aunque de momento no lo sea— o que dé lugar a una prueba admisible que demuestre que existe

---

[67] *Pérez v. El Vocero de PR*, 149 DPR 427 (1999); *Medina v. M. S. & D. Química de P.R., Inc., supra.*
[68] *Medina v. M. S. & D. Química de P.R., Inc., supra,* pág. 733.
[69] *Ramos Pérez v. Univisión, supra,* págs. 217- 218.
[70] *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 787 (2016).

evidencia para *probar* los elementos esenciales de su caso; (2) demostrar que hay prueba en el récord que puede convertirse en una prueba admisible y que derrotaría la contención de insuficiencia de la parte promovente; (3) demostrar que la moción es prematura porque el descubrimiento es inadecuado, está a medias o no se ha realizado; o (4) que este, por su naturaleza, no es un caso que conviene que se resuelva por el mecanismo expedito de la *sentencia sumaria*.[71] Respecto a esto último, conviene apuntar que, si bien se desaconseja utilizar la moción de *sentencia sumaria* en casos en los cuales existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa, la Regla 36 de las de Procedimiento Civil de 2009 no queda excluida como cuestión de derecho de ningún procedimiento en particular y puede funcionar en cualquier contexto sustantivo.[72]

Resta destacar que a la modalidad de la *sentencia sumaria* por insuficiencia de la prueba le aplican todas las normas y los principios que deben emplear los tribunales al evaluar una moción de *sentencia sumaria* ordinaria.[73]

- III -

En su escrito, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** infieren que el foro primario cometió dos (2) errores. En su primer señalamiento de error, aducen que abusó de su discreción al determinar que no procedía dictar sentencia sumaria para desestimar las causas de acción sobre represalias y discrimen a pesar de que consignó en la *Resolución* que el señor **GONZÁLEZ ORTIZ** no contaba con la evidencia necesaria para establecer un caso *prima facie* luego de haber culminado el descubrimiento de prueba. Referente a la causa de acción sobre represalias, ponderaron que esta no procede pues el señor **GONZÁLEZ ORTIZ** no puede probar que su despido fue inmeritorio. Además, plantean que, si bien este pudo haber hecho alguna

---

[71] *Medina v. M. S. & D. Química de P.R.*, Inc., *supra,* pág. 734.
[72] *Ramos Pérez v. Univisión, supra,* págs. 219- 220.
[73] *Medina v. M. S. & D. Química de P.R.*, Inc., *supra,* pág. 734.

expresión verbal referente a su intención de solicitar el puesto de Representante de Ventas en Propiedad y reclamar el pago de comisiones adeudadas, ello no constituía de por sí una queja que pudiera considerarse una actividad protegida.

En su segundo señalamiento de error, **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING** cuestionan, en síntesis, que se incidió al denominar como controversia de hecho la falta cometida por el señor **GONZÁLEZ ORTIZ** en el trabajo, la cual produjo daños y su despido. Puntean que este era un hecho probado por la evidencia material provista que podía ser adjudicado por la vía sumaria según el derecho aplicable y enfatizan que lo acontecido era de extrema gravedad para la empresa.

Como cuestión de umbral, precisa señalar que, a tenor con la normativa atinente a la revisión de *sentencia sumaria*, y luego de justipreciar concienzudamente los respectivos escritos presentados, hallamos que: (i) la *Solicitud de Sentencia Sumaria* presentada el 12 de diciembre de 2024 por **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING;** y (ii) la *Oposición a Solicitud de Sentencia Sumaria y Solicitud de Sentencia Sumaria a Favor de la Parte Querellante* presentada el 23 de enero de 2025 por el señor **GONZÁLEZ ORTIZ** cumplen con los requisitos de forma estatuidos en la Regla 36 de las de Procedimiento Civil de 2009, *supra*.

Al escrutar la totalidad del expediente judicial, este revela que no se aplicó correctamente la Regla 36 de las de Procedimiento Civil de 2009, *supra*. En ese sentido, surge del dictamen impugnado que el juzgador de instancia dispuso como un hecho en controversia "[s]i el señor **GONZÁLEZ ORTIZ** fue discriminado o hubo represalias en su contra".[74] Ello a pesar de que, en cuanto a las represalias, pronunció que el señor **GONZÁLEZ ORTIZ** no había logrado cimentar la presunción pues no le quedaba claro si este había presentado alguna queja y si el despido había sido provocado por dicha queja. Asimismo, en lo concerniente al discrimen, solventó que el señor **GONZÁLEZ**

---

[74] Apéndice del *Recurso de Certiorari*, pág. 12.

ORTIZ tampoco logró acreditar que fue discriminado por razones de edad y, de hecho, concluyó que las circunstancias relacionadas a ese hecho parecían demostrar que este no había sido discriminado por su edad.

Somos del criterio de que erró el tribunal primario al determinar que no procedía dictar sentencia sumaria para desestimar las causas de acción de represalias y discrimen instadas por el señor GONZÁLEZ ORTIZ.

El señor GONZÁLEZ ORTIZ esbozó, entre otras cosas, que su despido fue en represalias por haberse quejado que no se le concedía la plaza que *de facto* estaba ocupando. Empero, de sus escritos no surge prueba fehaciente que compruebe un caso *prima facie* de represalias y discrimen por edad. Conforme a nuestro estado de derecho actual, la misma era necesaria para que procedieran las referidas causas de acción. Por consiguiente, el señor GONZÁLEZ ORTIZ no derrotó la contención de insuficiencia de la prueba presentada por MATOSANTOS COMMERCIAL y EUROCARIBE PACKING. A la luz de ello, la jurisprudencia es clara e instituye que procede la resolución sumaria por insuficiencia de la prueba cuando, al concluir un descubrimiento de prueba, se desprende que la evidencia existente no es suficiente ni sustancial para sostener la causa de acción instada. Reiteramos que se cometió el primer error señalado.

Por otra parte, debemos reflexionar si se aplicó correctamente el derecho al asunto que nos ocupa. Resolvemos en la afirmativa. Lo cierto es que sí existen dudas en torno al hecho de si el señor GONZÁLEZ ORTIZ colocó alguna caja con mercancía en la compactadora de cartón en Supermax. A su vez, dicho hecho incide sobre la controversia medular de este caso, es decir, si el despido del señor GONZÁLEZ ORTIZ fue justificado o no. En definitiva, colegimos que el tribunal primario no erró ni abusó de su discreción, cometió perjuicio o error manifiesto al declarar, en cuanto a este aspecto, no ha lugar la *Solicitud de Sentencia Sumaria* presentada por MATOSANTOS COMMERCIAL y EUROCARIBE PACKING. Su determinación es esencialmente correcta y está

fundamentada en los documentos que obran en el expediente judicial. No se cometió el segundo error señalado.

En resumen, acogemos los hechos no controvertidos. Empero, tras el examen ponderado de los documentos del legajo o prueba documental, se limitan las controversias de hechos pendientes. Discernimos que las controversias que están pendientes a dilucidarse en sus méritos son las siguientes:

> 1. Si el señor González puso alguna caja con mercancía en la compactadora de cartón en SuperMax.
> 2. Si aún, por haber puesto una caja con mercancía en la compactadora, el señor González debió haber sido despedido, sin disciplina progresiva.
> 3. Si el despido del señor González fue justificado.
> 5. Si Matosantos le adeuda alguna cuantía al señor González.

- IV -

Por los fundamentos antes expuestos, (i) *expedimos* el auto de *Certiorari* a los fines de *modificar* la providencia judicial para desestimar, con perjuicio, las causas de acción sobre represalias y discrimen por edad interpuestas por el señor **GONZÁLEZ ORTIZ**; (ii) así modificada, *confirmamos* la *Resolución* decidida el 31 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en todos sus demás extremos; (iii) *devolvemos* el caso al foro primario para la continuación de los procedimientos de forma compatible con nuestros pronunciamientos; y (iv) declaramos **no ha lugar** la *Moción en Auxilio de Jurisdicción* presentada el 29 de septiembre de 2025 por **MATOSANTOS COMMERCIAL** y **EUROCARIBE PACKING.**

Al amparo de la Regla 35 (A)(1) de nuestro Reglamento, el Tribunal de Primera Instancia, Sala Superior de Bayamón, puede proceder de conformidad con lo aquí resuelto, sin tener que esperar por el recibo de nuestro mandato.[75]

---

[75] Regla 35 (A)(1): "La presentación de una solicitud de *certiorari* no suspenderá los procedimientos ante el Tribunal de Primera Instancia, salvo una orden en contrario expedida por iniciativa propia o a solicitud de parte por el Tribunal de Apelaciones. La expedición del auto de *certiorari* suspenderá los procedimientos en el Tribunal de Primera Instancia, **salvo que el Tribunal de Apelaciones disponga lo contrario**." Regla 35 (B) (5) del Reglamento

**Notifíquese inmediatamente**.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La Jueza Rivera Marchand concurre con el resultado sin opinión escrita y la Jueza Cintrón Cintrón disiente con el resultado sin opinión escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

del Tribunal de Apelaciones, según enmendada, *In Re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 58- 59, 215 DPR ____ (2025).